■ 350 OCEAN PARKWAY ASSOCIATES, Appellant, v LENA STEIN, Respondent. 350 OCEAN PARKWAY ASSOCIATES, Appellant, v SALLY LEONARD, Respondent.—In consolidated nonpayment summary proceedings, petitioner-landlord appeals (by permission) from an order of the Appellate Term of the Supreme Court for the Second and Eleventh Judicial Districts, dated December 31, 1979, which (1) modified a judgment of the Civil Court, Kings County, dated September 19, 1978 dismissing the petition against respondent Leonard, so as to make the dismissal without prejudice and (2) affirmed (a) an order of the same court dated July 26, 1978, which denied the petitioner's motion for judgment or a new trial in the consolidated proceedings against respondents Leonard and Stein and (b) a judgment of the same court, dated October 17, 1978, which, *inter alia,* was in favor ·of respondent Stein on her counterclaim for rent overcharges in the principal sum of $4,740.63. Order of the Appellate Term and order and judgments of the Civil Court reversed, on the law, without costs or disbursements, and petitioner's motion granted to the extent that it is entitled to recover from respondents Stein and Leonard rent at the stabilized level for the period from June, 1977 through January, 1978. Petitioner is the landlord and owner in fee of a class "A" multiple dwelling at 350 Ocean Parkway, Brooklyn, New York. The premises have been subject to rent stabilization since 1969, the date when petitioner became a member of the Rent Stabilization Association (RSA). Petitioner made timely payment of the annual RSA dues until 1972, and then, for reasons not entirely clear from the record, defaulted on payments for the years 1972 to 1977. Subdivision a of section YY51-4.0 of the Administrative Code of the City of New York (Rent Stabilization Law) provides that a housing accommodation will be subject to control "unless the owner of such units is a member in good standing of any association [RSA] registered with the housing and development administration". Whereas the indicia of "good standing" include compliance with Conciliation and Appeals Board orders, and the implementation of fair rent increases consonant with prescribed levels, there is no mention of timely payment of annual dues. However, in what appears to be a rational exercise of administrative authority, the RSA has promulgated regulations governing expulsion and readmission to the association, including as a ground for expulsion the failure to pay

annual dues. When petitioner learned in or about May, 1977 of the likely consequences of its dues default, it promptly made application to the RSA for reinstatement. Petitioner had never received an expulsion notice, nor had it received a notice of arrears explaining the consequences of being in arrears, as required by RSA regulations. Section 5 (subd c, par [1], cl [b]) of the Rent Stabilization Regulations, amended in 1977, provides as a ground for reinstatement of a former member expelled for nonpayment of dues: "The owner or agent of the property, through no fault of his own, was not properly served with written notice of the arrearage of dues or the consequences of failure to pay such dues". Petitioner, availing itself of that provision, and after making payment for arrearages retroactive to 1972, obtained reinstatement effective October, 1977. Petitioner's principal argument, rejected by Appellate Term, is that reinstatement premised on section 5 (subd c, par [1], cl [b]) is tantamount to a conclusion that expulsion was *ab initio* improper. More precisely, if petitioner had received the arrears notice and the consequences of continued default, it would have avoided expulsion entirely by paying the amount due. At the very least, petitioner should have been given the opportunity to make such payment before the subject premises were rendered rent controlled. Appellate Term concluded erroneously that petitioner's reinstatement to RSA membership was not *nunc pro tunc* to the date of expulsion. Since expulsion was improper, based on the RSA's failure to give notice of arrears (New York City Rent Stabilization Regulations, § 5, subd c, par [1], cl [b]), so is the subjection of petitioner to the sanction of rent control. Rather we find that the premises have been continuously rent stabilized since 1969. Therefore, rather than petitioner owing respondents for rent overcharges, respondents owe petitioner for rents due at the stabilized levels from June, 1977 through January, 1978. We note that since we find the reinstatement retroactive, we cannot sustain the 1977 order of the Office of Rent Control establishing for respondent Stein a maximum monthly rental at the rent controlled level. Judgment in Stein's favor on her counterclaim, sounding in rent overcharges for the period from July, 1974 through May, 1977, cannot be sustained, since Stein paid rent at the properly stabilized level during that period. Hopkins, J. P., Rabin, Margett and O'Connor, JJ., concur.